FILED

2012 Jul-16  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LASHONDA ADAMS,                        ]
    o/b/o A.M.P.,                    ]
                                     ]
    Plaintiff,                       ]
                                     ]
    vs.                              ]          2:11-CV-1132-LSC
                                     ]
MICHAEL J. ASTRUE,                     ]
Commissioner of Social Security        ]
                                     ]
    Defendant.                       ]

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, LaShonda Adams, on behalf of her son, Airimis M. Porter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Child's Supplemental Security Income ("SSI"). Ms. Adams timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Airimis was twelve years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he was in the seventh grade. (Tr. at 58, 62.) Ms. Adams

claims that her son became disabled on March 27, 2003, due to asthma, Oppositional Defiant Disorder (ODD), and ADHD. (Tr. at 18, 286.)

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). The first step requires a determination of whether the child is "doing substantial gainful activity." *Id*. If he or she is, the child is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner will consider the child's physical or mental impairments to see if there is an impairment or combination of impairments that is "severe." *Id*. If the impairments are not severe, the analysis stops. *Id*. However, if the impairments are severe, the Commissioner will look to see if one of the impairments meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. If the child has such an impairment and it meets the durational requirement, the Commissioner will find that he or she is disabled. *Id*.

In step number three of the sequential evaluation, the ALJ initially evaluates the evidence and determines whether the child's severe impairment or combination of impairments found in step two meets or medically equals a listed impairment. If they do not meet each of the criteria enumerated in the listings, the ALJ must decide whether the impairment or combination of impairments "functionally equals" the

severity of any listed impairment.  *See* 20 C.F.R. § 416.924(d).  When assessing functional limitations, the Commissioner considers all the relevant factors, such as how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health.  20 C.F.R. § 416.926a.  To determine functional equivalence, the child's limitations must be evaluated in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment or combination of impairments functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.  *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that Claimant has not engaged in substantial gainful activity at any time relevant to the decision. (Tr. at 24.) Based on the evidence presented, the ALJ concluded that his asthma, ADHD, and Disruptive Disorder are considered "severe" according to 20 C.F.R. § 416.924(c). *Id*.  Nonetheless, the ALJ determined that these impairments, when considered

singularly or in combination, did not medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25.) In evaluating functional equivalence, the ALJ found that Claimant does not have an impairment that meets or medically equals the listings in 20 CFR § 416.924(d) and 416.926(a). *Id.* In the domains of acquiring and using information and attending and completing tasks, the ALJ found Claimant's impairments caused a "less than marked limitation." (Tr. at 28.) In the domains of interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being, the ALJ found "no limitation." (Tr. at 29-32.) The ALJ concluded by finding that "[b]ased on the application for supplemental security income filed on March 21, 2003, Claimant has not been disabled, under Section 1614(a)(3)(c) of the Act, at any time since that day." (Tr. at 33.)

II.     Standard of Review

        This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d

1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.   *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."   *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Plaintiff alleges that the ALJ's decision should be reversed or remanded because (1) the ALJ improperly accorded minimal weight to the opinions of Dr. Arista Rayfield and Dr. S. Khan; and (2) the ALJ improperly accorded minimal weight to the opinion of Ms. Brenda Poellnitz, Claimant's first-grade teacher.  (Doc. 8 at 9-10.)

Plaintiff argues that the ALJ improperly accorded minimal weight to the opinions of Dr. Rayfield and Dr. Khan.  (Doc. 8 at 10.)  Plaintiff contends that "the ALJ's reasoning for finding Dr. Rayfield, Dr. Khan, and Ms. Poellnitz to all be not credible was conclusory" and not based on substantial evidence.  (Doc. 8 at 9.)

Under the regulations, the medical opinions of non-treating sources do not enjoy a deferential status.  *See* 20 C.F.R. § 416.927(d).  Instead, the weight the ALJ affords them varies depending on several factors, including the sources' examining and treatment relationship with the claimant, as well as the opinions' supportability and consistency with the other evidence of record.  *Id.*

A.    Physicians' Diagnoses

Plaintiff contends that the ALJ improperly afforded minimal weight to the opinion testimony of Dr. Rayfield.  (Doc. 8 at 10.)  Dr. Rayfield performed a psychological examination on Claimant pursuant to a referral from Dr. Wall, a primary

care physician. (Tr. at 19.) Dr. Rayfield examined the Claimant only once, in January 2003. She assessed a Global Assessment of Functioning (GAF) score of 50, indicating serious symptoms or impairment in his day-to-day functioning.  (Tr. at 27, 139.) However, Dr. Rayfield observed that Claimant was cooperative, in a good mood, and interacted well with his brother.  (Tr. at 140.)  She recommended a psychiatric consultation, family intervention, and behavior intervention, but indicated that his prognosis was fair and estimated treatment length at one year. (Tr. at 139.)  The ALJ considered Dr. Rayfield's opinion, but gave it minimal weight. (Tr. at 27.)  Because Dr. Rayfield had examined Claimant only once, she had limited opportunity to assess his limitations.  Further, the ALJ noted that Dr. Rayfield's assessment relied on information from the Claimant's mother, who had been shown to be a "less than fully credible informant."  (Tr. at 27.)  Claimant had not received any treatment or counseling at the time of the evaluation, and was not on any medication.  (Tr. at 27.) This treatment history is evidence supporting the ALJ's decision.  *See* 20 C.F.R. § 416.929(c)(3)(v).  An individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.  *See* SSR 96-7p, 1996 WL 374186.  Accordingly, substantial evidence supports the ALJ's decision to give minimal weight to Dr. Rayfield's opinion.

Plaintiff also contends that the ALJ essentially discarded all of the evidence that supported disability when he improperly accorded minimal weight to the opinion of Dr. Khan. (Doc. 8 at 10.) Dr. Khan is not a treating source under the regulations. 20 C.F.R. § 416.927(d).  He saw Claimant only once or twice when he completed his evaluation. (Tr. at 27.)  The record reflects evidence of a single visit, on December 19, 2008. (Tr. at 266.)  Dr. Khan completed an evaluation form provided by Claimant's representation on February 20, 2009, but it is unclear whether he actually examined Claimant at that time. (Tr. at 270-73.)  There is a drastic contrast between the limitations alleged by Claimant at the January 2009 hearing and the limitations reported by Dr. Khan on the evaluation form just 30 days later. (Tr. at 27.)  Dr. Khan indicated a *marked* or *extreme* limitation in each of the six domains. (Tr. at 271-272.) In five of the domains, Dr. Khan found limitations more severe than those alleged at hearing. (Tr. at 27, 353.)  In fact, in two domains, Dr. Khan found limitations that Claimant did not allege at all. (Tr. at 27.)

In Domain 1, Dr. Khan found an extreme limitation in acquiring and using information. (Tr. at 271.)  However, the record fails to support an extreme limitation of function in this area.  Examples of limited functioning in this domain are listed in 20 C.F.R. § 416.926a(g)(3) and include difficulty understanding words about space,

size, or time; difficulty recalling important things learned in school yesterday; and talking in only short, simple sentences. Claimant has not exhibited such problems. Rather, Claimant's mother testified that he is "very smart," and makes A's, B's, and C's in school. (Tr. at 307.) School records at the time of the hearing indicate that Claimant was maintaining a C average and was not in special education classes. (Tr. at 234.) Ms. Poellnitz, Claimant's first-grade teacher, indicated that he has less than marked limitations in this domain. (Tr. at 157.) Ms. Garrison, his kindergarten teacher, noted that he had no more than a "slight problem." (Tr. at 217.) Even Dr. Khan, despite his indication of an extreme limitation, initially assessed Claimant as having an average fund of knowledge. (Tr. at 267.)

Dr. Khan's opinion that Claimant has extreme limitations in Domain 2 is also unsupported by the record. This domain measures how well a child is able to focus and maintain his attention and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). As the ALJ noted, Claimant would be expected to have some limitations in this area, given his diagnosis of ADHD. (Tr. at 28.) However, Claimant's limited treatment suggests that his problems in this domain are not as severe as alleged. The ALJ noted that Claimant has not taken his ADHD

medications consistently or received consistent treatment. (Tr. at 29.) Claimant stopped seeing Dr. Elrefai, who treated him for ADHD in 2004, and did not initiate treatment with any other pediatric psychiatrist until December 2008. (Tr. at 29, 247, 332.) The ALJ reasoned that because Adderall requires a new prescription each month, Claimant could not have taken the medication since 2004. (Tr. at 29.) This lack of treatment is an indication that Claimant's problems in this domain were not debilitating. The ALJ did consider Dr. Khan's assessment. However, substantial evidence supports the ALJ's finding of a less-than-marked limitation in Domain 2.

Dr. Khan also found an extreme limitation in Domain 3, which measures Claimant's ability to interact and relate with others. (Tr. at 272.) However, substantial evidence supports the ALJ's decision that Claimant has no limitation in this domain. Dr. Khan assessed an extreme limitation in this domain after examining Claimant only once. (Tr. at 266.) His fifth grade teacher, who would have observed him daily, indicated the opposite. (Tr. at 239.) At the May 2005 hearing, Claimant did not allege any limitations in this domain. (Tr. at 289.) In fact, he testified that he has many friends, and enjoys playing sports with other children. (Tr. at 309-310.) In October 2004, Dr. Mark Ticola, a primary care physician at Primary Care Clinic, reported that Claimant had mostly younger friends. (Tr. at 264.) But, in October

2006, Dr. Ticola reported "good" peer relations. (Tr. at 252.) In September 2008, when Claimant was ten years old, Dr. Kierstin Leslie also indicated good peer relations, noting that Claimant "gets along well with others." (Tr. at 250.) Dr. Khan gave no explanation for his conclusions, and his assessment is not supported by the record. The ALJ properly discounted his opinion.

Dr. Khan's assessment of a marked limitation in Domain 4 is also unsupported by the record, and was properly discredited. Domain 4 measures a child's ability to move about and manipulate objects. (Tr. at 30.) Claimant never alleged a limitation in this domain. In fact, Claimant reported playing football and kickball, wrestling, and riding his bike — all of which are activities that would not be possible with a limitation in Domain 4. (Tr. at 250, 252, 316.) None of Claimant's teachers noted any limitation in this domain. Furthermore, Dr. Khan is a psychiatrist and did not treat Claimant for any physical condition. The ALJ correctly afforded no credit to Dr. Khan's opinion that Claimant has a marked limitation in this domain.

Dr. Khan indicated a marked limitation of function in Domain 5, but once again provided no explanation for that level of severity. (Tr. at 272.) Domain 5 measures Claimant's ability to care for himself. (Tr. at 31.) In the May 2005 hearing, Claimant alleged no limitation in this domain. (Tr. at 289.) However, in the January 2009

hearing, he alleged a marked limitation. (Tr. at 354.) Dr. Khan's assessment may have been based on reports from Claimant's mother that Claimant soils himself on a regular basis, and has done so for years. (Tr. at 354.) However, as the ALJ noted, there is no indication in the record that this conduct was ever reported to any medical professional, and none of Claimant's teachers noted such conduct on their questionnaires. (Tr. at 25, 31.) Dr. Khan gave no explanation for his assessment, and there is no evidence of behavior that would be consistent with a marked limitation of function in this domain. The ALJ was not required to adopt Dr. Khan's opinion.

Finally, in Domain 6, Dr. Khan indicated that Claimant has extreme limitations in health and physical well-being. (Tr. at 271.) Claimant did not allege a limitation in this domain, and the ALJ likewise found no limitation. (Tr. at 32.) Claimant's medical records support such a finding. The evidence reflects that Claimant received only sporadic treatment for asthma, and that he did not take medication for ADHD from 2004 until 2008. (Tr. at 32-33.) There is no medical evidence supporting an extreme limitation of function in this domain. The ALJ was correct in discounting Dr. Khan's opinion.

B.      Weight of Teacher's Opinion

Plaintiff argues that the ALJ failed to give proper weight to the opinion of Claimant's first grade teacher, Ms. Poellnitz.  Plaintiff argues that the ALJ went to "great lengths" to find Ms. Poellnitz not credible, and that the ALJ's reasoning for finding her not credible was conclusory and not based on substantial evidence.  (Doc. 8 at 9.)

In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 416.913(a).  A teacher is not an "acceptable medical source" under the regulations.  While the ALJ weighs such an opinion in the same manner as those from a medical source, they are not entitled to any particular deference.   20 C.F.R. § 416.927(d).  The ALJ can consider evidence not only from medical sources, but also "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments."  20 C.F.R. § 416.913(d).  These "other sources" can include school teachers, counselors, developmental center workers, and parents.  *Id.*  "The better an explanation a source provides for an opinion, the more weight we will give that opinion."  20 C.F.R. § 416.927(d)(3).  The

weight given to opinions of non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." *Id.*

Ms. Poellnitz filled out a teacher questionnaire in May 2005. The questionnaire was formulated by Claimant's representative, and included no basis for the responses given. (Tr. at 27, 157-158.) Ms. Poellnitz indicated a marked limitation in Domain 3, Interacting and Relating to Others, as well as a marked limitation in Domain 5, Caring for Self. (Tr. at 158.) She noted that Claimant "likes to daydream in class and sometimes has a problem staying on task." (Tr. at 158.)

As discussed above, substantial evidence supports the ALJ's finding of no limitation in Domain 3. At the time of Ms. Poellnitz's assessment, Claimant was only seven years old and known to have separation anxiety issues. (Tr. at 27). As the ALJ noted, age and immaturity likely played a role in Ms. Poellnitz's assessment of limitations in this domain. (Tr. at 27.) Claimant alleged no limitation in this domain at his 2005 hearing, which occurred just two days before Ms. Poellnitz completed the questionnaire. (Tr. at 289.) Testimony from Claimant himself, as well as from other teachers, provide substantial evidence for a finding of no limitation in Domain 3. The ALJ properly discounted Ms. Poellnitz's opinion.

Ms. Poellnitz also provided no explanation for her assessment of a marked limitation in Domain 5. As discussed above, however, such an opinion is unsupported by the evidence on record. The ALJ properly afforded limited weight to her assessment.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Adams' arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 16th day of July 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458